ROBERT KING and WIFE, appellants, *against* SAMUEL MORRISON, administrator of JAMES MORRISON, deceased, appellee.

J. M. obtained patents for his real estate, and executed to the commonwealth mortgages for the purchase money, and died: administration upon his estate issued to his son. The real estate was divided, appraised, and taken by the son, and the other children, in purparts of unequal quantity and value. It was valued at its full value, without any deduction on account of the purchase money. The administrator paid the purchase money out of the personal estate.

*Held*—That the payment was a good one, and the administrator entitled to a credit for it.

Where personal estate is appraised, and a part taken by the heirs at the appraisement, and a part sold at an advance upon the sum at which part was appraised, the administrator will not be charged with a proportional advance on the goods retained; without any evidence that the goods retained were of greater value than their appraised price.

*Query.*—Under what circumstances should an administrator be charged with an advance on goods so taken?

J. M. died in 1810, having in his possession a bond on his brother D., given in 1794, which come to the hands of the administrator, who with D. in 1811, although the cause of action exceeded $100, entered, before a justice of the peace an amicable action, and referred all matters in variance to referees, who reported in favour of D.; from this the administrator appealed. In 1814, the Supreme Court decided, that a justice had not jurisdiction by amicable action, and reference, where the cause of action exceeded $100. This decision was published in 1818; the appeal was then quashed: D. obtained judgment by *scire facias* reviving the original judgment in his favour before the justice. To this the administrator issued a *certiorari*, reversed the judgment for want of jurisdiction in the justice, and to the next term, in 1820, brought suit on the bond and recovered judgment.

D., who in 1810 was solvent, when judgment was rendered against him had become insolvent, and the debt was lost. By refering to the record of the proceeding in court, it appeared the admistrator had eminent counsel.

*Held*—That although the proceeding before the justice had been a mistake, the administrator was not liable for the debt which had been lost.

There is no case where trustees have acted with good faith, and under the advice of counsel, in which they have been held responsible.

J. M. left a slave of advanced age, who by the advice of appraisers, and family, was not appraised, and lived with family till they separated, and with widow until her death, and since that lived with administrator. At the time of the account taken, 1827, she was of no value, and the administrator agreed to keep her during her life. *Held*—That under the circumstances of the case the administrator was not chargeable with the value of her services.

This was an appeal from the decree of the Orphans' Court of Lancaster county, passing and confirming the administration account of *Samuel*, administrator of *James Morrison*, deceased.

*James Morrison*, died in December, 1810, seized of a large real, and possessed of considerable personal estate. In his lifetime he had procured patents for his land, and executed to the State two

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

mortgages for the purchase money, &c. Administration on his estate was committed to his widow, *Eleanor,* and his eldest son, *Samuel,* the appellant, (who survived his mother,) in March, 1811. An inventory of the personal estate was filed, a part of it was taken by some of the heirs, and a part sold by the administrator, who filed a vendue paper, from which it appeared there was a considerable advance on the property sold.

In 1811, a proceeding was had in the Orphans' Court upon the real estate, in which it was divided into six parts; and appraised at its full value, making no deduction for the money due for patenting the land. The purparts into which it was divided were unequal in quantity and value. *Samuel,* the eldest son, and the administrator, took the largest and most valuable purpart: three others were, at the same time, taken by three other of the children of the intestate. Of the two parts which remained, one was taken, in 1812, by another child, and the other by the appellant, in right of his wife, in 1817. Several of the children were minors at the death of the intestate, and among them the appellant's wife, who was married to appellant in 1817. The family lived together at first, but removed as they severally got married. The widow died in 1827.

*James Morrison,* at the time of his death, held a bond on his brother *Daniel,* given in 1794, which came into the possession of the administrators, and which, at the time the inventory was taken, was admitted to be just by *Daniel.* In 1811, an amicable action was entered before *David Montgomery,* Esq. a justice of the peace, by the administrators and *Daniel Morrison,* and all matters in variance referred to referees. The referees reported three hundred and twenty-six pounds eighteen shillings and seven pence, in favour of *Daniel Morrison,* and the justice, on the 11th day of January, 1812, entered judgment on their report; from which, on the 13th of January, the plaintiffs, the administrators, appealed to the court of Common Pleas.

In 1814, the Supreme Court of the State, in the case of *Brenneman* v. *Greenawalt,* decided, that the fourteenth section of the hundred dollar law, does not authorise a reference to men, in a suit before a justice of the peace, where the sum in controversy exceeds one hundred dollars. This case was published in 1818, in the first volume of *Serg. & Rawle,* page, 27. On the 16th June, 1818, the appeal, in the case of *Morrison's* administrators against *Daniel Morrison,* was quashed.

*Daniel Morrison,* obtained a *scire facias* to be issued, by the justice, upon the judgment in his favour, on which, in June, 1819, judgment was entered. To this judgment, the administrators issued a *certiorari.* The judgment was reversed on the ground of a want of jurisdiction in the justice: and the administrators, to

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

September term, 1820, brought suit on his bond, against *Daniel Morrison*, and recovered a verdict and judgment against him for two thousand nine hundred and fifty-three dollars and eighty-five cents.

*Daniel Morrison* was in good circumstances, but having, on the 3d of June, 1812, sold his land in Lancaster county for eight thousand dollars, he afterward became insolvent, so that when execution issued against him, on this judgment, but one hundred and seventy-three dollars was made.

It was in proof, by the record, that the administrators in this controversy with *Daniel Morrison*, had able counsel.

Several administration accounts had been filed—the first in 1816, the second in 1820, (in each of these the widow was one of the accountants,) and a third in 1827, by *Samuel Morrison*, as surviving administrator. References to auditors had taken place in the controversies with the administrator, *Samuel*, who was the acting representative of the estate; and reports had been made in different stages of the business, one of which had never in any way been returned, or made a part of any proceeding in court.

As neither of the two first accounts purported to be a final settlement of the whole estate, nothing was considered as concluded; and in May, 1829, the whole matter was referred to auditors, to re-examine each of the accounts, and report on each.

The auditors made a report, which being confirmed, was brought by appeal, into this court, and the following exceptions here taken, and relied on,

1st. That the administrator should not have been credited with the sum of one thousand three hundred and ninety-seven dollars and sixty-five cents, paid by him to the State, for patenting the land.

2d. That he should have been charged with an advance on the goods taken by the heirs at the appraisement.

3d. That he should have been charged with two thousand nine hundred and fifty-three dollars and twenty-one cents, (and interest thereon,) the amount of the judgment recovered against *Daniel Morrison*.

4th. That he should have been charged with the value of a negro woman, (the property of the intestate,) who had not been included in the inventory.

*Montgomery* and *Porter*, for the appellant.

1st. The administrator should not have been credited with the amount paid by him for patenting the land. The trust, conferred by administration, is confined to the personal estate; the form of the bond given by the administrator, for the faithful discharge of his duty, refers to that alone.

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

An administrator is not entitled to credit in his administration account, for any money expended on account of the real estate, or the maintenance of the children. *M'Kinney* v. *Barber's Administrator*, 8 *Serg. & Rawle*, 347.

Under the intestate laws, debts due to the commonwealth, are to be last paid: but here the administrator reversed the order and paid this debt; and suffered other debts to remain and interest to accumulate on them.

The purchase money due to the commonwealth is a charge on the land, and not personal; and is expressly decided not to be payable by executors out of the personal assets. *Helfenstein, administrator of Waggoner* v. *Waggoner*, 13. *Serg. & Rawle*, 307.

Nor is it just that the personal estate should be so applied, for here the children of the intestate took unequal shares of the real estate, and the discharge of this debt out of the personal estate, will therefore operate unequally; giving the greatest advantage to *Samuel*, the appellee, who has the largest purpart of the land. It cannot, too, be endured that the personal estate should be swept from the widow, who is a favorite of the law, to exonerate the real estate.

2d. They contended that the administrator should be charged with an advance on the goods retained by the children, which should have been ascertained by calculation; and should be in proportion to the advance of sales on the goods actually sold.

If an executor omit to sell goods, he is answerable for their full value. *Toller on Ex.* 427.

Any other doctrine would open a door to fraud; permitting the administrator, after the appraisement, to select such articles of personal property as he might find to be worth more than the amount of their valuation.

3d. The negligence of the administrator, is the ground on which he ought to be charged with the bond due by *Daniel Morrison.* The negligence of which he has been guilty is *supine* negligence, of the grossest kind. He is bound by his duty, as administrator, to collect the debts due the estate, and settle his account, within one year, from the time administration is granted to him.

Here, years are suffered to elapse before he brought suit, and the consequence is the loss of the debt. At all events he should have secured the debt by obtaining judgment upon it.

He derives no protection from the proceeding before the justice of the peace. That proceeding was *coram non judice*, and a mere nullity. But besides, it was a voluntary submission to reference, from which, if a loss ensued, he is bound to bear that loss. *Toller, on Ex.* 424. He ought to have sought the ordinary forum, which alone could ensure his safety from responsibility. Here too, after

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of
James Morrison, deceased, appellee.)

the decision in the case of *Brenneman* and *Greenawalt*, he might
have discontinued his appeal, brought suit, and secured the debt.

If an administrator delay to bring suit on a bond, he is liable.
*Gordon's Law of Decedents*, 264.

4th. They contended that the administrator should be charged
with the services of the negro woman, who had resided with the
family: that the appellant was married in 1816, and had not par-
ticipated equally in the benefit of those services.

*W. Hopkins* for the appellee, referred to the cases of *Buckley* v.
*Ellmaker*, 13 *Serg. & Rawle*, 76. *Harker* v. *Elliott*, 7 *Serg. & Rawle*,
284, and argued—

1st. The debt due the commonwealth for patenting the land,
was a debt by mortgage, created by the intestate, which he was
bound to pay. It is a debt by specialty, and must be paid out of
the personal estate, although there be no bond or covenant to pay
it. *Gordon on Decedents*, 175. *King* v. *King*, 3 *Peer. Williams*, 358.

In the order of paying the debts of decedents, bonds and spe-
cialties are in the fifth class. *Purdon*, 376, 14*th sect. act of* 19*th*
*April*, 1794.

But this order applies only to cases of deficiency of assets,
which does not exist here, and if it did, the mortgage would place
it in the class of specialties and to be paid out of the personal
estate. In the case of *Helfenstein's Adm'r* v. *Waggoner*, there was
no mortgage, and this constitutes the distinction between that case
and this.

Interest was chargeable on the debt due to the commonwealth,
and therefore there was no difference, in this respect, between the
payment of this debt and any other.

2d. It does not follow because there was an advance on the
goods sold, that there would have been an advance on the goods
retained by the family. These goods are usually such as do not
sell well; consisting, for the most part, of second hand household
furniture.

3d. *Daniel Morrison's* bond was not put into the inventory of the
estate. At the time the inventory was taken, the heirs acquiesced
in not putting it into the inventory, as is proved by a witness exa-
mined. *Hart* v. *Ten Eyck*, 2 *Johns. Ch. R.* 80. *Orr* v. *Kaines*, 2
*Vesey*, 194.

A trustee is not chargeable with imaginary values, or more than
he has received, unless guilty of gross negligence, amounting to wil-
ful default. A trustee is not responsible for an error of judgment.
*Osgood* v. *Franklin*, 2 *Johns. Ch. R.* 27. So where a trustee goes by
the advice of counsel, and acts with good faith, and where the
confidence reposed by him was the same as that which had been
extended by the intestate, he is not liable.

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

It may have been an error of sharp-sighted judgment, but for this a trustee is not answerable. *Thompson* v. *Brown,* 4 *Johns. Ch. R.* 619, 26, 27.

The bond was given by *Daniel,* to his brother in 1794, and was not sued by him up to the time of his death, in 1810; so that the administrator did but continue the ancestral confidence, which had been reposed, by his father, in his uncle.

But the administrator did seek a judgment. *Daniel* claimed a large set off, and by mutual consent the amicable action was entered before the justice; and the matters in controversy submitted to reference. Under the act of 1810, giving jurisdiction to justices of the peace, it was generally supposed, at the bar, that a justice might, under the fourteenth section, entertain jurisdiction of a cause of action, exceeding one hundred dollars in this way. This impression was not ascertained to be erroneous, until the case of *Brenneman* v. *Greenawalt* was decided; and although this case was decided in 1814, it was not published until 1818, and did not, until then, become generally known to the bar.

During all this time, the proceeding instituted before justice *Montgomery* was pending, and could not, owing to the great amount of business in the court of Common Pleas of Lancaster county, be disposed of: and, during all this time, the administrator proceeded by the advice of counsel.

When the case of *Brenneman* v. *Greenawalt* became known, the appeal was quashed; but the judgment before the justice in favour of *Daniel Morrison* remained unreversed; nor could this be effected until he chose to proceed on it: for no *certiorari* could be issued after twenty days from the rendition of that judgment.

But so soon as *Daniel* obtained a judgment, on the *scire facias,* which he caused to be issued, the administrator issued a *certiorari,* reversed that judgment, and having thus removed every difficulty growing out of that proceeding, he brought suit on the bond, and obtained a judgment. If then there were error on the part of the administrator, it was an error of judgment, there was no *lata culpa,* and it is clear that for an error of judgment he is not liable.

4th. The negro woman lived in the family. By the consent of the parties, she was not included in the inventory, and each of the children had a proportion of benefit from her services.

*Reply.* The mortgage given for the purchase money of the land to the commonwealth, does not differ the case. It did not change the *nature* of the debt, it but merely added a more formal security, and ascertained the amount of it.

It does not follow because the debt due by *Daniel Morrison* was not put into the inventory, that therefore the administrator is not chargeable with it. It is not the general practice to put debts into the inventory. There is no proof that counsel were ever

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of
          James Morrison, deceased, appellee.)

consulted, as to *instituting* the proceeding before the justice. If
such had been the fact, it should have been proven by the testi-
mony of the counsel who were employed.

Had he brought a suit in court, he would have secured a lien,
which could not be effected by the proceeding before the justice.

The case in 2 *Johns. Ch. R.* is of a desperate debt, and that in
4 *Johns. Ch. R.* is of a partner, in whom confidence was placed as
such.

The estate will be liable for the support of the black woman,
and the administrator should be charged as respects us; for the
appellant derived no advantage from her services.

The opinion of the court was delivered by

HUSTON, J. (who recapitulated the facts of the case.)—1. The
first exception is that the accountants claimed, and were allowed,
a credit of one thousand three hundred and ninety-seven dollars
and sixty-five cents, for patenting the land of the deceased. An
act of assembly, passed in 1785, had allowed those persons whose
lands were unpatented, to obtain a patent, on giving to the State
a mortgage for the purchase money remaining due. *James Mor-
rison*, in his lifetime, had, under this law, taken patents for his
land, and given two mortgages to the commonwealth for the pur-
chase money in arrear. It appeared fully in evidence, that respect-
able counsel had advised the administrators, that they must satisfy
these mortgages; and further, that the inquest, which divided the
lands, were apprised of this, and estimated them at so much per
acre, clear of these mortgages—all inquests in such cases do so.
It cannot be pretended that there was any injustice in paying the
mortgage money to the State—for it being added to the price of
each parcel, and the amount of the several purparts added toge-
ther, making the sum total, to be equally divided among the heirs,
it is most apparent each child bore an equal part of this.

But 8 *Serg. & Rawle*, 347, is cited, in which the court say, the
administrator had no right to a credit for money expended on ac-
count of real estate. In that case, the widow, who had married
again, had kept possession of the farm, and yet charged the chil-
dren two thousand dollars, for improvements, during about eleven
years, being much more than the rents. This was disallowed.
There is no question the case was decided rightly—but the expres-
sion could not have been used as universally true: for the nine-
teenth section of the general act concerning intestate's estates, ex-
pressly authorises the administrators, to borrow on mortgage,
(giving the premises for security,) any sum of money, not exceeding
one-third of the value thereof, or to sell and convey such part or
parts of the said lands, as the Orphans' Court of the county where
the lands lie, shall in either case, from time to time, think fit to

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

allow, for defraying just debts, maintenance of the children, putting them apprentices, teaching them to read and write, or *for the improvement of the residue of the estate, if any be, for their advantage.* Now this is to be done, in case there is no personal estate; if there is personal estate, it would seem the same may be done with it: and whatever the law directs administrators to do, may be, and must be put into an administration account. But the account ought to shew the debts to be paid, before any allowance to improve the land, or at least that there will be enough with which to pay them. In this case this was a debt, and peculiarly proper to be paid: for as each mortgage covered about four hundred acres, and that was divided and taken in unequal quantities, and at different prices, it would have been difficult to apportion the sum each was to pay on the mortgage. The mortgage is a debt of the intestate, and to be paid with the personal estate, in case of intestacy, if administrators can pay it. 3 *Peer. William,* 358. In this case, under the circumstances, there was no error in allowing this credit.

2d. exception. The auditors erred in not charging an advance on the personal estate, taken by the heirs at the appraisement. On that part of the goods sold, there was an advance. And if it had been proved that the articles taken at the appraisement, had been sold by those who took them, at an advance, this advance ought to be charged to each heir who took them at such appraisement; but there is no such proof, nor any proof that either of the administrators took any article at the appraisement. The family lived together until they successively married. In such case certain articles are necessary to be bought, or taken at the appraisement. There is no proof how they were divided at the death of the widow, or as each child separated. There was no exception at the time the first or second account was settled, as to this matter, and we see no evidence, which, at this time, would justify us in supporting this exception, more especially, as it appears to us that this item is, by a mistake, really charged twice in the account, and credited but once.

3d. exception. The auditors have erred, in not charging the administrators with two thousand nine hundred and fifty-three dollars and twenty-one cents, being the amount of a bond and interest which the intestate held on *Daniel Morrison,* and which was lost by negligence of the administrators. This is an item of serious amount, and was really lost to the estate; and a witness proved that it might have been collected at the death of intestate, or rather that *Daniel* was able at that time to pay it, and promised to pay it when he sold his land. By the bye, this witness was at one time an arbitrator on one of these accounts, and then allowed a credit for it.

26

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of
James Morrison, deceased, appellee.)

By the fourteenth section of the act of 20th March, 1810, it is
provided, that any justice may take cognizance of any thing made so
by this act, for any sum exceeding one hundred dollars, if the par-
ties voluntarily appear before him for the purpose; and shall
proceed for the recovery thereof, by entering judgment if confess-
ed, *or if submitted to him by reference.* This was understood to mean
if the parties instituted a suit voluntarily, and referred it to arbi-
trators chosen by themselves, and the justice entered judgment on
the award. It was known before, that parties might refer at com-
mon law to arbitrators, and were bound by the award; but they
often had to sue on the award, and it was supposed that the judg-
ment on the award, by the justice, came in place of an action of
debt on the award. In many parts of the State, much was settled
in this way. Under this impression, the administrators and *Daniel
Morrison,* submitted their claim, on this bond, to three arbitrators,
before a justice. This was in the summer of 1811. *Daniel* set up
a defence as to the whole, and more; and an award was made in
his favour for three hundred and twenty-seven dollars, and judg-
ment entered for him. The administrators appealed to court. Two
eminent counsel were employed by them. The business in court in
this county was greatly in arrear, and a special court appointed, in
addition to the regular court, have not yet brought up the busi-
ness. In 1814, the Supreme Court decided, that such proceedings,
before a justice, were illegal and void. This decision was not
published, or generally known, until 1818. *Brenneman* v. *Greena-
walt,* 1 *Serg. & Rawle,* 27. Soon after this, the appeal was struck
off the docket, and *Daniel Morrison* issued execution. The admi-
nistrators took out a *certiorari,* and reversed the proceedings:—
and before the next term brought suit in court, and recovered;
but *Daniel Morrison* had become insolvent, and the debt was
lost. There was no delay in any part of the proceedings, but
the proceedings were unfortunately mistaken. It is believed there
is no instance where trustees have acted with good faith, and
under the advice of counsel, (and here they had eminent,) in which
they have been held responsible. 4 *Johns. Ch. R.* 619. It is an
unfortunate business; but one in which there was neither negli-
gence nor fault. The mistake in the proceeding was not peculiar
to them, or to this district. In the district in which I lived, such
proceedings were common, and no lawyer questioned their legality,
before the case above cited.

4th. This exception embraces several small items, which the re-
ferees on the second account had charged to the administrators.
No evidence was before us to shew why these charges were made,
and as that report was waived by the present submission to audi-
tors, we do not see how we can decree the administrators to pay
those sums. That report had not been confirmed by the court.

(Robert King and wife, appellants, *v.* Samuel Morrison, administrator of James Morrison, deceased, appellee.)

The bare fact, that one set of auditors made those charges, is met by the fact, that the present auditors rejected them, and without some evidence of their justice, we cannot say the administrator must pay them.

There is another item under this fourth error: *James Morrison* left, among other property, a negro woman, a slave. The proof is, she was of an advanced age, was (by the advice of the appraisers and the family,) not appraised; she lived with the family as long as they lived together, and with the widow, till the widow's death, and since that has gone to *Samuel.* No exception on account of this woman, was made to either of the two first accounts. The objection is now made by the husband of the youngest daughter, who was a minor at the time of the appraisement. She however married about 1816 or 17, and her husband made no objection then, nor when the second account was filed. Where a family have made arrangements for their own convenience, or that of their mother, and have acted on that arrangement so long as from 1811 till 1827, without objection, an objection then taken, appears harsh. I do not say such objection will never be sustained in court, but it must be a substantial one to have effect. Minors will not be bound by arrangements by the elder branches of the family, where they are for the exclusive advantage of the latter, and unjust to the minors, but the objection ought to be made in some reasonable time. In the country, where the female part of the family do the work of the house, the daughters derive as much benefit from the labour of a female slave, as the sons; perhaps a little more. *Samuel* had, perhaps, the least of the whole family; and as no complaint was made until after the death of the mother, there is little, if any, ground for charging him, with what was of more benefit to the wife of the complainant, than to *Samuel:* she is now of such an age as to be of no value, and he agrees to keep her during her life. Much respect is paid to family arrangements, if just and reasonable, and especially if long acquiesced in. There are two other exceptions not insisted on, and we confirm the report of the auditors' so far as it is before us.

Decree affirmed.

Tod, J., dissented as to the advance claimed on the goods taken at the appraisement. This he thought ought to be calculated and charged: and also as to the payment of the mortgage to the State, which he thought ought not to be credited out of the personal estate.